# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

IN RE:

JONAS JOHN DELAGRANGE

Debtor(s).

NANCY J. GARGULA, United States Trustee

Plaintiff(s),

v.

JONAS JOHN DELAGRANGE

Defendant(s).

In Proceedings
Under Chapter 7

Case No. 16-40964

Adversary No. 17-4017

## **OPINION**

This matter is before the Court on the Complaint Objecting to Debtor's Discharge filed by Nancy J. Gargula, United States Trustee ("Plaintiff"). In her multi-count complaint, the Plaintiff seeks to deny debtor Jonas John Delagrange ("Defendant") a discharge pursuant to 11 U.S.C § 727(a)(4)(D) for his alleged withholding of documentation and other information from the Chapter 7 Trustee (Count I). Additionally, she requests that Defendant's discharge be denied pursuant to 11 U.S.C. § 727(a)(6)(A) for his repeated failure to comply with Court orders (Count II) and for his alleged making of false oaths pursuant to 11 U.S.C. § 727(a)(4)(A) (Counts V, VI, and VII).[1]

---

[1] The complaint originally included Counts III and IV, which requested that the Defendant's discharge also be denied for his  alleged concealment of assets pursuant to 11 U.S.C. §§ 727(a)(2)(A) and 727(a)(2)(B) respectively. However, the Plaintiff subsequently withdrew Counts III and IV in her proposed Findings of Fact, Conclusions of Law and Brief in Support of Plaintiff's Complaint. *See* ECF  Doc. 27.

1

A trial on the complaint was conducted on June 27, 2018.  The Plaintiff appeared through her counsel, Mark D. Skaggs.  The Defendant appeared *pro se*.  At trial, the Court heard testimony from both the Defendant and from Dana S. Trustee, the Chapter 7 Trustee ("Trustee").  Based on the sworn/affirmed testimony, a review of the documentary evidence presented, and the Plaintiff's written Proposed Findings of Fact, Conclusions of Law and Brief (Adv. Doc. 27),[2] the Court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

## FINDINGS OF FACT

(1)   Defendant Jonas John Delagrange filed an involuntary Chapter 7 petition against himself on October 17, 2016. ECF Doc. 1.[3]

(2)   After a hearing on November 9, 2016, the Court ruled that the involuntary petition was improper and directed the Defendant to file an amended voluntary petition within seven (7) days. The amended voluntary petition was subsequently filed on November 16, 2016.

(3)   Dana S. Frazier was appointed as the Chapter 7 Trustee in this case.  She testified that in performing her duties as Trustee, she reviews not only the debtor's bankruptcy petition, schedules and other documents, but also conducts her own public records search as to each debtor in order to ascertain their complete financial situation.

---

[2] Defendant did not file proposed findings of fact, conclusions of law or a brief in contravention of this Court's pretrial order and Local Bankruptcy Rule 7016(C).   Paragraph 5 of the pretrial order entered January 25, 2018 specifically required the parties to file proposed findings of fact, conclusions of law and briefs in support of their respective positions at least 14 days prior to trial.  Further, Paragraph 13 of the pretrial order advised the parties that "failure of a party or an attorney to comply with the provisions of [the] order may result in the imposition of sanctions against the non-filing party, including, but not limited to, awarding attorneys fees to the opposing party, striking pleadings, deeming non-controverted facts to be admitted, and/or entering judgment against the non-complying party."  It should also be noted that at the pretrial hearing on January 25, 2018, the Court explained at length the requirements of the pretrial order to the Defendant and the Defendant acknowledged these requirements.

[3] Documentary references are to filings in the Defendant's underlying bankruptcy case (16-40964) unless otherwise noted.

(4)   On November 28, 2016, the Trustee sent the Defendant a letter requesting that he provide her with copies of his last filed state and federal income tax returns; his bank statements for the 90-day period immediately prior to and including the date of the bankruptcy filing; and a verification of his income for the previous six month period.  These documents were to be provided to the Trustee on or before December 30, 2016. *See* Plaintiff's Ex. 9.

(5)   The November 28, 2016 letter, as well as all subsequent correspondence from the Trustee, was mailed to the Defendant at the address that he provided on his bankruptcy petition. The Trustee testified that none of her correspondence to the Defendant has ever been returned by the U.S. Postal Service.

(6)   When the Trustee received no response from the Defendant, she sent a second request asking that the above-referenced documents be provided to her on or before January 20, 2017. *See* Plaintiff's Ex. 10.  Again, the Trustee received no response from the Defendant. In fact, the Trustee testified that the Defendant has *never* provided her with any of the requested information.

(7)   The Trustee conducted a Meeting of Creditors pursuant to 11 U.S.C. § 341 on March 3, 2017 ("§ 341 Meeting").[4]   Based on the Defendant's testimony, the Trustee concluded that she needed additional information regarding his income, assets and other financial dealings.

(8)   In a letter dated March 8, 2017, the Trustee requested documentation regarding certain assets that were either owned by the Defendant or in which he had an interest.   Specifically, the Trustee requested copies of all of the Defendant's real estate deeds; vehicle and trailer titles;  bank statements and checks for the two-year period immediately prior to filing; and insurance policies for all of the Defendant's real and personal property.   The Trustee also requested documentation

---

[4] The March 3, 2017 meeting was actually one of several § 341 meetings that the Trustee conducted in this case.

regarding the Delagrange Inheritance Trust, including a list of trust assets and copies of any trust amendments. *See* Plaintiff's Ex. 13.

(9)  The Defendant failed to provide any of the documents requested in the March 8, 2017 letter. Accordingly, the Trustee mailed a second request to the Defendant on March 28, 2017. *See* Plaintiff's Ex. 14.  In conjunction with this second request, the Trustee also filed a Motion for Turnover with this Court requesting that the Debtor be ordered to turnover numerous items of undisclosed personal property. *See* ECF Doc. 101; Plaintiff's Group Ex. 15.

(10)  The Court conducted a hearing on the Motion for Turnover on May 10, 2018. Both the Trustee and the Defendant were present at this hearing. Although the Defendant did testify, the "testimony" that he provided was non-responsive. Instead of addressing the Trustee's requested turnover of assets, the Defendant repeatedly challenged the jurisdiction of this Court and the legitimacy of the Bankruptcy Code. *See* Plaintiff's Ex. 20.

(11)  After hearing the testimony and considering the arguments of the parties, the Court granted the Motion for Turnover. In an Order entered May 16, 2017, the Defendant was directed to turnover a number of unencumbered assets to the Trustee including: livestock; coal; cash and other currency; gold coins; gold bars; silver; multiple vehicles, trailers, and buggies; and the rent proceeds from certain rental real estate in Cisne, Illinois ("Turnover Order"). The Turnover Order specifically required the Defendant to either deliver the property to a designated auction site or to make the property available for pickup by the Trustee's agent within twenty-one (21) days. *See* ECF Doc. 120; Plaintiff's Group Ex. 15.

(12)  The Trustee discovered all of the assets referenced in the Turnover Order through her own efforts. None of the subject assets were voluntarily disclosed by the Defendant.

(13)  The Defendant failed to comply with the Turnover Order in any way. Accordingly, on

4

June 28, 2017, the Trustee filed her first Petition for Rule to Show Cause.

(14)  A hearing on this Petition was conducted on August 2, 2017.  Again, the Defendant was present at this hearing and provided testimony.  The Court granted the Trustee's Petition for Rule to Show Cause and ordered the Defendant to comply with the Turnover Order within seven (7) days.  In its order, the Court specifically found that the Defendant had "failed, refused, and neglected to turnover certain personal property as required in this Court's Order entered May 16, 2017." *See* ECF Doc. 14; Plaintiff's Group Ex. 16.

(15)  When the Defendant again failed to turn over the property, the Trustee filed a Petition for Rule to Show Cause and for Seizure.  This Petition was granted after a hearing on October 11, 2017 and memorialized in a written order entered October 13, 2017.  The Court specifically  found the Defendant to be in civil contempt for "willfully failing and refusing to comply with the Turnover Order" and authorized the Trustee, with the assistance of the U.S. Marshal's Service, to seize all of the assets referenced in the Turnover Order. *See* ECF Doc. 152; Plaintiff's Group Ex. 17.

(16)  To date, none of the property referenced in the Turnover Order has ever been turned over to either the Trustee or to her agent.

(17)  In conjunction with the filing of his bankruptcy petition, the Defendant filed schedules, a Statement of Financial Affairs and a Statement of Current Monthly Income.

 (18)  These documents were all signed under penalty of perjury that the information contained therein was true and correct. *See* ECF Docs. 13, 40 and 39.

(19)   Schedule A/B requires a debtor to list all of their interests in certain real and personal property.  Despite this, the Defendant did not list any of the assets referenced in the Turnover Order on his Schedule A/B.[5]

(20)   Although the Defendant filed a "Revised" Schedule A/B on April 19, 2017, this amended document did not list any additional assets.  Instead, the revised schedule was basically a copy of the Defendant's original Schedule A/B to which he attached a copy of his birth certificate. *See* ECF Doc. 108; Plaintiff's Ex. 7.[6]

(21)   At his § 341 Meeting,  the Defendant testified to "having" certain undisclosed items of property, including a skid steer, multiple vehicles and trailers, appliances, tools, and livestock.  *See* Plaintiff's Ex. 18.   However, he repeatedly maintained that he did not have an actual ownership interest in any of these items.  Instead, the Defendant asserted that all of the property in question was owned by an "inheritance" or "family" trust ("Trust").[7]

(22)   The Defendant's interest in the Trust was not disclosed either on his Schedule A/B or on his Statement of Financial Affairs and no Trust documents have ever been provided to the Trustee.

(23)   The Defendant was also questioned at the § 341 Meeting about his interest in other personalty such as electronics, jewelry, firearms, books, and collectibles.   In response, the Defendant refused to indicate whether he owned any such items. Instead, he answered all of the Trustee's inquiries with the response, "That's private."  Plaintiff's Ex. 18 at 95-6.

---

[5] The Defendant listed virtually *no* assets on his Schedule A/B.  In fact, the only property that the Defendant disclosed were three (3) parcels of real estate valued at $771,500.00; $1,000.00 cash; $260.00 in an unidentified checking account; and security deposits with Jasper Water Works, Wabash, Verizon and TCI totaling $300.00. *See* ECF Doc. 31.

[6] While it was not entirely clear from the testimony, it appears that the Defendant believes that his birth certificate is some type of "bond" that will pay all of his debts in this bankruptcy.

[7] The Defendant referred to the Trust as both a "family trust" and an "inheritance trust" in his testimony. The actual legal name of the Trust has never been provided to the Trustee.

(24)   A debtor is required to disclose all of their income on the Statement of Financial Affairs and Schedule I. The Defendant affirmatively stated on his Statement of Financial Affairs that he had not received any income during 2014, 2015 or 2016 from employment, the operation of a business, or from any other sources.  ECF Doc. 39, ¶¶ 4-5.

(25)   Similarly, the Defendant stated on Schedule I that he was unemployed and had $0 monthly income at the time of filing.  He further indicated that his sole source of income consisted of "donations."  ECF Doc. 37.

(26)   Despite these representations, the Defendant testified at trial that he does roofing work "in exchange for labor or trade" and that in 2016, he and his son put roofs on at least five (5) homes. He further acknowledged that he is one of the owners of JJD Roofing and Construction.  Although the Defendant could not remember exactly when JJD Roofing and Construction was formed, he admitted that it was formed prior to 2015 and that it "could be" in existence today.

(27)   The Defendant affirmatively stated on his Statement of Financial Affairs that he made no pre-petition transfers of property. ECF Doc. 39, ¶¶ 16-19.

(28)   This representation, however, was contradicted by the Defendant's § 341 testimony. Under questioning by Plaintiff's counsel, the Defendant admitted that he transferred real estate to Gloria Sun Jung Yun of East Stroudsburg, Pennsylvania on September 1, 2016.  *See* Plaintiff's Ex. 18 at pp 23-29; Plaintiff's Ex. 19; Plaintiff's Ex. 20.   At the time of the transfer, Ms. Yun was a debtor in bankruptcy and the Defendant believed that by transferring his property to her, he could somehow delay a pending foreclosure action against his property.  Plaintiff's Ex. 18 at pp. 28-9.

(29)   To date, the Defendant has not amended his schedules or his Statement of Financial Affairs in order to address any undisclosed assets, income or property transfers.

## DISCUSSION

It is well established that "[t]he principal purpose of the Bankruptcy Code is to grant a 'fresh start' to the 'honest but unfortunate debtor.'" *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365, 367, 127 S. Ct. 1105, 1107, 166 L.Ed. 2d (2007) *citing* Grogan *v.* Garner, 498 U.S. 279, 286-87, 111 S. Ct. 654, 659 112 L.Ed. 2d 755 (1991).  A discharge in bankruptcy is a privilege, not a right and "[a] debtor who has not been honest and forthcoming—particularly in connection with the bankruptcy itself—does not deserve that privilege." *In re Drabik*, 581 B.R. 554, 561 (Bankr. N.D. Ill. 2018); *Peterson v. Scott (In re Scott)*, 172 F.3d 959, 966 (7th Cir. 1999); *In re Juzwiak*, 89 F.3d 424, 427 (7th Cir. 1996).

Denial of a debtor's discharge is an extraordinary remedy "akin to financial capital punishment [and] . . . is reserved for the most egregious misconduct by a debtor." *In re Watkins*, 474 B.R. 625, 630 (Bankr. N.D. Ind. 2012).  As such, objections to discharge are construed liberally in favor of the debtor and strictly against objectors in order to protect the debtor's fresh start. *Union Planters Bank N.A. v. Connors*, 383 F.3d 896, 901 (7th Cir. 2002); *Juzwiak*, 89 F.3d at 427.  The objecting party is required to prove each element of the applicable claims under 11 U.S.C. § 727(a) by a preponderance of the evidence. *In re Scott*, 172 F.3d at 966-67.

In the instant case, the Plaintiff seeks to deny the Defendant a discharge pursuant to various provisions of 11 U.S.C. § 727(a).  The Court shall discuss each of the bases raised by the Plaintiff in turn.

## A. WITHHOLDING DOCUMENTATION—11 U.S.C. § 727(a)(4)(D)

In Count I of the Complaint, the Plaintiff seeks to deny the Defendant's discharge pursuant to 11 U.S.C. § 727(a)(4)(D) due to his failure to "produce documentation and answer basic questions concerning [his] financial affairs and property." *United States Trustee's Proposed*

8

*Findings of Fact, Conclusions of Law and Brief in Support of Plaintiff's Complaint*, Adv. ECF Doc.

2 at 2.

      Section 727(a)(4)(D) of the Bankruptcy Code provides as follows:

      (a)  The court shall grant the debtor a discharge, unless—

            (4)  The debtor knowingly and fraudulently, in or in connection with
            the case—

                  (D)  withheld from an officer of the estate entitled to
                  possession under this title, any recorded information,
                  including books, documents, records, and papers,
                  relating to the debtor's property of financial affairs.

11 U.S.C. § 727(a)(4)(D).  As the court explained in *In re Tieszen*, 1999 WL 669263 (Bankr. N.D.

Ill. 1999):

      Trustees lack the time and resources to play detective and uncover all assets and
      transactions of their debtors.  *Bay State Milling Co. v. Martin (In re Martin)*, 141
      B.R. 986, 997-98 (Bankr. N.D. Ill. 1992 (citations omitted); *Morton v. Dreyer (In re*
      *Dreyer)*, 127 B.R. 587, 595 (Bankr. N.D. Tex. 1991) (citations omitted).  '[D]ebtors
      in bankruptcy have an affirmative duty to surrender to the Trustee. . . .all recorded
      information relating to property of the estate, and are also obligated to cooperate by
      providing the Trustee. . . with all relevant documents and papers and fully answering
      the questions in the petition for relief and attached schedules.' *Martin*, 141 B.R. at
      998 (citations omitted).  Section 727(a)(4)(D) enforces this obligation by denying
      discharge to debtors who intentionally withhold records, books, documents or other
      papers relating to their property or financial affairs.  *Id.* (citation omitted).  The
      requisite intent to act knowingly and fraudulently 'may be established by
      circumstantial evidence, or by inference drawn from a course of conduct.'  *Id.*
      (*quoting Nassau Savs. And Loan Ass'n v. Trinsey (In re Trinsey)*, 114 B.R. 86, 92
      (Bankr. E.D. Pa. 1990).

*Tieszen* at *7.  "Courts have found the requisite intent to act 'knowingly and fraudulently' . . . where

the debtor's conduct was evasive or persistently uncooperative."  *In re Young*, 346 B.R. 597 (Bankr.

E.D.N.Y 2006); *In re Erdheim*, 197 B.R. 23, 29 (Bankr. E.D.N.Y. 1996).

The unrefuted testimony of the Trustee evidences that the Defendant has *repeatedly* failed to provide her with requested documentation regarding his financial affairs and property.  Although the Trustee has made multiple requests for copies of the Defendant's tax returns, bank statements, vehicle and trailer titles, real estate deeds, insurance policies, Trust documents and income verification, none of the requested information has ever been produced.[8]  Due to the lack of documentation and the paucity of information provided on the Defendant's schedules and Statement of Financial Affairs, it is absolutely impossible to discern the Defendant's actual financial condition.

The Defendant's conduct throughout the course of this case clearly demonstrates that his failure to provide documents and other information to the Trustee was not due to simple oversight, misunderstanding or negligence.  Instead, the Defendant has evidenced a knowing and fraudulent intent to withhold necessary financial information from the Trustee and his creditors.  He has persistently failed to cooperate with the Trustee at every turn and has frustrated her attempts to discern his true financial situation by providing evasive and, at times, unintelligible testimony at his § 341 Meeting and at hearings before this Court.  For instance, at the § 341 Meeting, counsel for the Plaintiff questioned the Defendant regarding conversations that he may have had with Ms. Yun regarding the transfer of his interest in real estate.  In response, the Defendant stated, "It's none of your business." Plaintiff's Ex. 18 at p. 7, Lines 5-7.  Other inquiries concerning the Defendant's personal property and financial transactions were met with responses of "that's private" or "that's a private matter."   *See* Plaintiff's Ex. 18, pp. 25-27; Ex. 18 p. 40; Ex. 18 pp. 94-96.[9]  Defendant was

---

[8] The Trustee testified that the Defendant did appear at her office on one occasion in order to deliver documents. However, the documents that he provided were not the documents that the Trustee had requested.

[9] At trial when questioned about whether he provided the Trustee with requested documents regarding the Trust or the transfer of his real property to Ms. Yun, the Defendant repeatedly answered, "I don't recall."

even loath to state his name for the record, replying "My name is private property and I can't—I won't give that." Plaintiff's Ex. 18 p. 4, Lines 1-3.[10]

From the foregoing, it is clear that the Defendant has failed to afford even a *minimal* level of cooperation to the Trustee. A debtor's cooperation is a prerequisite for receiving a bankruptcy discharge. *In re Dwyer*, 127 B.R. 587, 595 (Bankr. N.D. Tex. 1991). This Court finds that the Defendant's failure to provide complete financial documentation and information to the Trustee throughout this case was knowing and fraudulent and, accordingly, the Defendant's discharge is denied pursuant to 11 U.S.C. § 727(a)(4)(D).

## B. FAILURE TO COMPLY WITH COURT ORDERS—11 U.S.C. § 727(a)(6)(A)

In Count II of her complaint, the Plaintiff seeks to deny the Defendant's discharge pursuant to 11 U.S.C. § 727(a)(6)(A). This section provides that a court shall grant a discharge unless the debtor "has refused, in the case[,] to obey any lawful order of the court, other than an order to respond to a material question or to testify." 11 U.S.C. § 727(a)(6)(A). Failure to comply with an order due to mistake, inadvertence, or inability to comply does not constitute "refusal" for purposes of § 727(a)(6)(A). Instead, the debtor's non-compliance with the order must be the result of willful, intentional disobedience or dereliction. *In re Holstein*, 272 B.R. 463, 480 (Bankr. N.D. Ill. 2001); *Matter of Jarrell*, 129 B.R. 29, 33 (Bankr. D. Del. 1991); 6 COLLIER ON BANKRUPTCY ¶ 727.09[1], p. 727-48 (16th ed.). *See also In re Jordan*, 521 F.3d 430, 433 (4th Cir. 2008).

To establish willfulness, the party objecting to discharge must demonstrate that "the debtor received the order in question and failed to comply with its terms. The debtor must then explain his non-compliance." *In re Kutrubis,* 486 B.R. 895, 901 (N.D. Ill. 2013). *See also In re Mullin*, 455 B.R. 256, 263 (M.D. Fla. 2011). Hence, the Plaintiff bears the original burden of going forward as

---

[10] A similar exchange occurred at the May 10, 2017 hearing on the Trustee's Motion for Turnover where the Defendant insisted that his name was "private" and a "fiction." *See* Plaintiff's Ex. 20, pp 3-4.

11

well as the ultimate burden of proof to show that there has been a violation of a lawful court order. The burden of going forward then shifts to the Defendant to prove that he "has not committed the objectionable act or that there is some other defense." 6 COLLIER ON BANKRUPTCY ¶ 727.09[1] at p. 727-48; *Connelly v. Michael*, 424 F.2d 387, 389 (5th Cir. 1970).

Here, the Plaintiff seeks to deny the Defendant's discharge based on his failure to comply with this Court's Turnover Order of May 16, 2017, as well as with the orders to show cause entered August 8, 2017 and October 13, 2107 respectively. The record is clear that the orders in question are valid orders that were entered by this Court and that the Defendant received copies of them. The Trustee credibly testified that she served the Defendant with copies of all of the orders at his address of record and that none of them were returned. She also produced copies of certificates of service that were filed with this Court evidencing such service.[11] Plaintiff's Gr. Exhibits 15, 16, 17.

It is equally apparent that the Defendant failed to comply with *any* of the subject orders. The May 16, 2018 Turnover Order required the Defendant to turnover a number of unencumbered assets to the Trustee. In the Order to Show Cause entered August 8, 2017, the Court specifically found that Defendant had "failed, refused and neglected to turnover certain personal property as required by this Court's Order of May 16, 2018." Plaintiff's Gr. Ex. 16. Similarly, in its October 13, 2018 Order to Show Cause and [for] Seizure of Assets, the Court found the Defendant in civil contempt for "willfully failing and refusing to comply with the Turnover Order." *See* Plaintiff's Gr. Ex. 17. In fact, according to the Trustee's unchallenged testimony, *none* of the items specified in the Turnover Order have *ever* been turned over to either her or to her agent.

Because the Plaintiff established that the Defendant willfully failed to comply with lawful court orders, the burden then shifted to the Defendant to explain his non-compliance or to offer

---

[11] The Court also notes that the subject orders were all entered pursuant to hearings and memorialized rulings that had previously been made in open Court. The Defendant was present at all of these hearings. *See* ECF Docs. 118, 136 and 151.

other defense. He failed to do so. In fact, the Defendant offered absolutely no explanation as to why he failed to comply with the orders of this Court. Although the Defendant was given an opportunity to cross-examine the Trustee, no cogent challenge was made to her testimony. His entire cross-examination was comprised of the statement, "I need proof of the difference between private and fiction."

Similarly, the Defendant provided no explanation for his failure to comply with this Court's orders during his case-in-chief. The Defendant's case was comprised of the following statement which he prepared in advance of the hearing and read into the record:

> I want to make a statement to bring up the facts. For us under the occupation via the Geneva and The Hague Convention and the bankruptcy of the United States military, the government are liable for all debts and obligations via those items. The ces que via trust should be paying these debts and obligations via subrogation. I as beneficiary, being alive and not lost, demand you as a trustee immediately handle these situations and that in return all assets and remaining receipts to myself. I have raised all of these lawfully and controlling issues continuously via notice and demands and they have been unlawfully ignored and violated in violation of the Constitution. The sole duty of government is to protect the people, life, liberty, property, not illegal plans fit for their own benefit. And that will be it.

Certainly, there is nothing in this statement that coherently explains why the Defendant failed to adhere to the orders of this Court. At no point in these proceedings did the Defendant assert that he was somehow unable to comply with the orders or that his non-compliance was the result of inadvertence or mistake. Therefore, the Court can only conclude that the Defendant's failure to comply with its orders was willful and intentional.

As a procedural matter, the Court notes that the Turnover and Show Cause Orders are not the only orders with which the Defendant failed to comply. On January 25, 2018, the Court entered a pretrial order which required the parties to exchange evidence and to file proposed findings of fact, conclusions of law, and briefs in support of their respective positions at least 14 days prior to trial. While the Plaintiff fully complied with this order, the Defendant did not. As a consequence,

the Court prohibited the Defendant from introducing any exhibits at trial pursuant to Local Bankruptcy Rule 7016(D).[12]  This prohibition was of no import, however, as the Defendant had no exhibits to present.[13]

Based on the foregoing,  the Court finds that the Defendant willfully refused to comply with lawful orders of this Court and, accordingly, his discharge is denied pursuant to 11 U.S.C. § 727(a)(6)(A).

## C. MAKING A FALSE OATH—11 U.S.C. § 727(a)(4)(A)

Finally, the Plaintiff requests that the Defendant's discharge be denied as a consequence of making false oaths pursuant to 11 U.S.C. § 727(a)(4)(A). Specifically, the Plaintiff alleges that the Defendant made false oaths by signing inaccurate and incomplete schedules (Count V); by signing an inaccurate and incomplete Statement of Financial Affairs (Count VI); and by providing false testimony at the § 341 Meeting of Creditors (Count VII).

Pursuant to § 727(a)(4)(A), a debtor who "knowingly and fraudulently, in or in connection with the case . . . made a false oath or account" is not entitled to a discharge. 11 U.S.C. § 727(a)(4)(A). "[T]o prevail on a claim under this subsection, the Trustee must prove by a preponderance of the evidence that:  (1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew that the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement materially related to the bankruptcy case."  *Stamat v. Neary*, 635 F.3d 974 (7th Cir. 2016) *citing The Cadle Company v. Duncan (In re Duncan)*, 562 F.3d 688, 695 (5th Cir. 2009).

---

[12] This Local Rule states that the Court may "refuse consideration of or strike any pleading or other document, or take any other appropriate action" for a party's failure to comply with this Court's pretrial procedures. The Court notes that the Defendant did not respond to the Court's ruling or indicate that he had exhibits to offer.
[13] The Court notes that the Defendant brought only a visibly thin file with him to the hearing, from which he produced his statement.

14

A debtor's bankruptcy petition, schedules, Statement of Financial Affairs, and testimony at the § 341 meeting all constitute "statements under oath" for purposes of § 727(a)(4)(A). Here, there is no question that the Defendant made statements under either oath or affirmation. He executed the required Declaration About an Individual Debtor's Schedules (Official Form 106Dec) and Part 12 of the Statement of Financial Affairs, in which he declared under penalty of perjury that all of the information contained in his bankruptcy schedules and Statement of Financial Affairs was true and correct. *See* Plaintiff's Exhibits 3, 4 and 7. Likewise, the transcript of the March 3, 2017 § 341 Meeting indicates that the Defendant affirmed that the testimony he provided was truthful. Plaintiff's Ex. 18.

There is also no question that many of the statements which the Defendant made under oath or affirmation were not true. In fact, his schedules, Statement of Financial Affairs and § 341 testimony are rife with falsehoods. For instance, on Schedule A/B, the Defendant affirmatively stated that he did not own, lease or have any interest in any cars, vans, trucks, tractors, sport utility vehicles or motorcycles. Plaintiff's Ex. 1, ¶ 3. However, the Trustee credibly testified that her search of the Secretary of State's records revealed that the Defendant actually had an ownership interest in *eleven* different vehicles and trailers during the relevant period of inquiry. Plaintiff's Gr. Ex. 15; Ex. 18; Ex. 20. The Defendant also stated on his schedules that he had no legal or equitable interest in any household goods, furnishings, tools, clothing, livestock or trusts. All of these statements, however, were repudiated by the Trustee's testimony regarding her investigation into the Defendant's financial affairs and his own § 341 Meeting testimony.

The Defendant's Statement of Financial Affairs contains similar falsehoods. For instance, the debtor indicated that he had received no income in 2016 or during the two calendar years prior to filing; that he had not sold or otherwise transferred any property to any persons outside the

ordinary course of business within two years of the filing of his bankruptcy petition; and that he had not transferred any property to a self-titled trust or other device of which he was a beneficiary within the past ten years. *See* Plaintiff's Ex. 3. ¶¶ 4, 5, 18, 19.   Again, based on the Trustee's investigation and the Defendant's own testimony, all of these statements were patently untrue.

Finally, the Defendant repeatedly testified under affirmation at his § 341 Meeting that various parcels of real estate and personalty-- including multiple vehicles-- were owned by the Trust at the time that the bankruptcy petition was filed.   These assertions, however, were contradicted by the records of the County Assessor and of the Illinois Secretary of State, which showed that *none* of the property in question was titled in the name of the Trust. Clearly these examples show that the Defendant made false statements under oath.

In addition to showing that the Defendant made false statements under oath, in order to establish a claim under 11 U.S.C. § 727(a)(4)(A), the Plaintiff must also prove that the Defendant knew that the statements were false.   Here, the Defendant has not satisfactorily explained why he failed to disclose assets and property transfers on his schedules and Statement of Financial Affairs or why he offered false testimony as to the ownership of his assets at the § 341 Meeting.   In fact, the Defendant has offered no explanation whatsoever as to any of his actions, other than to posit that they involve "private matters."   Accordingly, the Court must conclude that the Defendant knew that his statements were false.

The fourth element under 11 U.S.C. § 727(a)(4)(A) requires the Plaintiff to prove that the Defendant's statements were made with fraudulent intent.   As the Seventh Circuit has explained, "[i]ntent to defraud involves a material representation that you know to be false, or what amounts to the same thing, an omission that you know will create an erroneous impression." *In re Chavin*, 150 F.3d 726, 728 (7th Cir. 2012).   "To find the requisite degree of fraudulent intent, a court must find

that the debtor knowingly intended to defraud or engaged in behavior that displayed a reckless disregard for the truth." *In re Campbell*, 475 B.R. 622, 638 (Bankr. N.D. Ill. 2012).  In making such a finding, the court must consider the debtor's entire pattern of behavior.  *In re Yonikus*, 974 F.2d 901, 905-06 (7th Cir. 1992).  Because a debtor is unlikely to testify that his intent was fraudulent, "[i]ntent under section 727(a)(4)(A) may be inferred from circumstantial evidence or by inference based on a course of conduct." *Baccala Realty, Inc. v. Fink (In re Fink)*, 351 B.R. 511, 527 (Bankr. N.D. Ill. 2006).  *See also In re Duncan*, 562 F.3d 688, 695 (5th Cir. 2009) (showing of reckless disregard for the truth sufficient to support a finding of fraudulent intent under § 727(a)(4)); *In re Garcia*, 586 B.R. 909, 917 (Bankr. N.D. Ill. 2018) (reckless disregard can be established by showing that debtor made "numerous false statements that, taken in cumulative effect, harm the bankruptcy estate").

In the instant case, the Defendant has persistently engaged in behavior calculated to frustrate and defraud.  For instance, he disclosed virtually no assets on his schedules and Statement of Financial Affairs and repeatedly failed to provide even the most basic financial documentation to the Trustee, thus forcing her to undertake her own independent investigation of his financial affairs. In response to questioning at the § 341 Meeting as to those assets that the Trustee was able to discover, the Defendant either testified that they were owned by the Trust—the existence of which has never been established—or that their ownership was a "private" matter.  Similarly, although the Defendant disclosed no transfers of property on his Statement of Financial Affairs, he testified at the § 341 Meeting that he did, in fact, transfer property to Gloria Sun Jung Yun in an effort to impair the ability of his creditors to foreclose. Based on the foregoing, it is clear to the Court that the Defendant's conduct throughout the course of this case was harmful to the bankruptcy estate and that his misrepresentations and omissions were made with the intent to defraud creditors.

Finally, in order to prevail under § 727(a)(4)(A), the Plaintiff must establish that the Defendant's fraudulent statements related materially to the bankruptcy case.  As the court explained in *In re Garcia*:

> A fact is material 'if it bears a relationship to the debtor's business transactions or estate, or concerns the discovery of assets, business dealings or the existence and disposition of the debtor's property.'  This broad interpretation of the element of materiality ensures the 'successful functioning of the Bankruptcy Code [which] hinges both upon the bankrupt's veracity and his willingness to make full disclosure.'

*Garcia*, 586 B.R. at 917 (internal citations omitted).  *See also In re Senese*, 245 B.R. 565, 574 (Bankr. N.D. Ill. 2000) ("[a] statement is deemed material for purposes of § 727(a)(4)(A) if it relates to the debtor's estate, discovery of assets, disposition of property or a debtor's entitlement to discharge.").

Here, there is no question that the Defendant's fraudulent statements and omissions were materially related to his bankruptcy case.  He provided false information and testimony regarding his assets and income and failed to disclose transfers of property.  This type of information is essential to any bankruptcy proceeding and the Defendant's lack of candor and veracity has seriously impeded the Trustee's ability to properly administer this estate.

From the above-discussion, it is clear that the Trustee has proven all of the elements necessary to sustain a cause of action under 11 U.S.C. § 727(a)(4)(A).  The Court finds that the Defendant knowingly made fraudulent oaths and accounts in his § 341 testimony, schedules and Statement of Financial Affairs and, accordingly, his discharge is denied pursuant 727(a)(4)(A) of the Bankruptcy Code as well.

## CONCLUSION

A discharge in bankruptcy is a privilege that will only be conferred on debtors who are honest and forthright in their dealings with the Trustee and with the Court.  The Defendant in this

case has persistently failed to cooperate with the Trustee and has blatantly flouted the requirements

of the Bankruptcy Code and orders of this Court.  He has obfuscated the true nature of his assets

and has made it virtually impossible for the Trustee, creditors and this Court to accurately assess his

financial situation.  In sum, the Defendant has abused the bankruptcy process and has not earned the

privilege of a discharge.  Accordingly, for the reasons set forth in this Opinion, judgment is entered

in favor of the Plaintiff and against the Defendant on the Complaint and the Defendant's discharge

is denied pursuant to §§ 727(a)(4)(D), 727(a)(6)(A), and 727(a)(4)(A) of the Bankruptcy Code.

     SEE WRITTEN ORDER.


ENTERED: September 14, 2018

       /s/ Laura K. Grandy
       UNITED STATES BANKRUPTCY JUDGE